UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 08-50062-04-KES |
| Plaintiff, | ) | |
| | ) | ORDER DENYING |
| vs. | ) | DEFENDANT'S MOTIONS |
| | ) | FOR ACQUITTAL, NEW TRIAL, |
| KENT HAZELRIGG, | ) | AND ARREST OF JUDGMENT |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

Defendant, Kent Hazelrigg, has moved this court for acquittal, new trial, and arrest of judgment. See Docket 449. The government resists this motion. See Docket 452.

**FACTUAL BACKGROUND**

Hazelrigg was charged in a superseding indictment with the crimes of conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine and possession of 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine with the intent to distribute. See Docket 165, Counts I and II. The government moved to dismiss the distribution charge prior to trial. A jury found Hazelrigg guilty of conspiracy to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine on November 5, 2009. See

Docket 437. After receiving an extension of time, this motion for acquittal, new trial, and arrest of judgment followed.

## DISCUSSION

Hazelrigg raises three issues for the court's consideration: the sufficiency of the evidence against him; the purported failure of the prosecutor to produce as discovery phone records containing text messages prior to trial; and the prosecutor's references to the defendant's demeanor while testifying. See Docket 449.

### I. Motion for Acquittal

The defense argues that the prosecution did not present sufficient evidence of Hazelrigg entering into a conspiracy to distribute methamphetamine. See Docket 449 at 4. Specifically, the defense argues that the evidence shows nothing more than a buyer-seller relationship between Hazelrigg and government witness Alyshia Herrick. See Docket 449 at 4, 6-7.

#### A. Legal Standard

Federal Rule of Criminal Procedure 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29. Even after a jury returns a guilty verdict, "the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c). The court reviews the evidence and all reasonable inferences that could be drawn from it "in the light most favorable

to the government." United States v. Serrano-Lopez, 366 F.3d 628, 634 (8th Cir. 2004). The court must uphold the jury's verdict even "[i]f the evidence rationally supports two conflicting hypotheses[.]" Id. (internal citations omitted). Finally, the court will not disturb the jury's assessment of the witnesses' credibility absent extraordinary circumstances. United States v. Hakim, 491 F.3d 843, 845-46 (8th Cir. 2007); United States v. Hayes, 391 F.3d 958, 961 (8th Cir. 2004).

**B.     Analysis**

For a jury to have found Hazelrigg guilty of conspiracy to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, the government had to prove beyond a reasonable doubt that Hazelrigg reached an agreement or understanding with at least one other person to distribute a mixture or substance containing methamphetamine, that Hazelrigg joined in the agreement or understanding voluntarily, that he knew the purpose of the agreement or understanding, and that the conspiracy involved 50 grams or more of a mixture or substance containing methamphetamine. See Hakim, 491 F.3d at 846 (listing the elements of conspiracy). "Intentional participation in a criminal conspiracy need not be proved by direct evidence and may be inferred from the facts and circumstances." Id. (citing United States v. Prieskorn, 658 F.2d 631, 634 (8th Cir. 1981)).

Taken in the light most favorable to the government, the evidence at trial showed that initially, Hazelrigg bought methamphetamine through Herrick. Herrick testified she sold methamphetamine from Eric Johnson to others and that Shaun Huckaby was her principal buyer of methamphetamine. See Docket 471 at 138, 142. In October of 2007, Herrick and Huckaby sold Hazelrigg approximately a quarter ounce of methamphetamine. See Docket 471 at 143.

Eventually, Hazelrigg became a seller of methamphetamine. In November of 2007, Herrick saw Hazelrigg with approximately two ounces of methamphetamine immediately after they met with Eric Johnson at the Flying J. See Docket 471 at 173. At Hazelrigg's home following the meeting at the Flying J, Herrick witnessed Hazelrigg hand another man approximately a half ounce of methamphetamine. See Docket 471 at 174. In late December of 2007, Herrick acquired two eightballs[1] of methamphetamine from Hazelrigg for sale to Justin Bickle. See Docket 471 at 180. Around the same time period, Herrick acquired another three eightballs of methamphetamine from Hazelrigg for two different drug sales. See Docket 471 at 187-88. Finally, Herrick described an incident she was aware of through Eric Johnson in which Johnson supplied Hazelrigg with approximately four ounces of methamphetamine after Hazelrigg's house had been raided. See Docket 471 at 171; Docket 473 at 285. The prosecution also presented physical evidence seized from Hazelrigg's home on November 20, 2007,

---

[1] An "eightball" is one-eighth of an ounce. Docket 471 at 177.

consistent with drug distribution, including a digital scale, a postal scale, a security camera system, baggies, and pink and white methamphetamine.

This evidence and reasonable inferences therefrom could lead a reasonable jury to believe that Hazelrigg voluntarily entered into an agreement with at least one other person to distribute methamphetamine. The multiple transactions and the quantity of methamphetamine presented tend to show that Hazelrigg knew the purpose of the agreement or understanding. Furthermore, the quantities at issue are enough for a reasonable jury to conclude that Hazelrigg was personally responsible for 50 grams or more of methamphetamine. And there are no extraordinary circumstances compelling the court to reject the jury's assessment of the witnesses' credibility. Accordingly, defendant's motion for acquittal is denied.

## II. Motion for New Trial

The defense argues that a new trial should be granted for three reasons: the weight of the evidence, a violation of Federal Rule of Criminal Procedure 16, and references the prosecution made about defendant's demeanor while on the stand.

### A. Legal Standard

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. The district court has broad discretion to grant a new trial. United States v. Campos,

306 F.3d 577, 579 (8th Cir. 2002). The district court " 'can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict[.]' " Id. (quoting White v. Pence, 961 F.2d 776, 780 (8th Cir. 1992)). But "[u]nless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand." Id. (citing United States v. Lacey, 219 F.3d 779, 783 (8th Cir. 2000)).

### 1. Weight of the Evidence

"Motions for new trials based on the weight of the evidence are generally disfavored." Id. While "[this] court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29," "it . . . must exercise the Rule 33 authority 'sparingly and with caution.' " Id. (citing United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980)).

Hazelrigg admits he sold methamphetamine to Herrick on two different occasions. See Docket 449 at 4. He argues instead that a buyer-seller relationship between him and Herrick is not enough to establish a conspiracy to distribute methamphetamine. For reasons discussed above, however, the government presented enough evidence from which this court can conclude that the jury's verdict was not a miscarriage of justice. Accordingly, defendant's motion for a new trial is denied as it relates to the weight of the evidence.

### 2. Phone Records

Defendant also alleges a violation of Fed. R. Crim. P. 16(a)(1)(E), which commands the government to permit the defendant to inspect, copy, or photograph documents and objects within the government's possession that is either "material to preparing the defense" or that "the government intends to use . . . in its case-in-chief at trial[.]" Fed. R. Crim. P. 16(a)(1)(E). The phone records at issue are two text messages included on a print out of text messages sent and received from Hazelrigg's cell phone between November 18, 2007, and November 20, 2007. See Docket 449, Exhibit 1. The first message was an incoming message to Hazelrigg's phone and asks, "What's better, pink or white?" The second message was a reply from Hazelrigg's phone with, "Don't know. Pink." The defense had requested production of all written materials to be introduced at trial. See Docket 449 at 10.

The government used the substance of the two text messages at trial. See Docket 471 at 60-61. The government was operating under an open file policy, which means defendant's attorney was given access for review purposes all of the contents of the law enforcement files approximately two months before the trial started. The text messages were contained in the law enforcement files. See Docket 452 at 3. The government cannot prove, however, that it gave the defense a separate copy of the cell phone print out until the morning of the first day of trial when it provided the defense with a copy of all exhibits it intended to

7

introduce during trial.  See Docket 452 at 3.  The defense made no Rule 16 objection when the government offered the text messages during trial.  See Docket 471 at 58-61.  Defense counsel was also able to cross-examine the law enforcement officer about the context of the text messages.  See Docket 471 at 67.

By not objecting to the admission of the evidence or requesting a continuance, defendant effectively waived his right to appeal on this issue.  " 'As a general rule, a defendant who does not request a continuance will not be heard to complain on appeal that he [or she] suffered prejudice as a result of late-arriving discovery.' " United States v. Davis, 244 F.3d 666, 672 (8th Cir. 2001) (finding the general rule did not apply when the late-arriving evidence had been excluded as a sanction for the government's failure to comply with the court's discovery order) (quoting United States v. Sepulveda, 15 F.3d 1161, 1178 (1st Cir. 1993), *cert. denied*, 512 U.S. 1223 (1994)).  " 'Thus, in situations where defense counsel does not seek a continuance upon belated receipt of discoverable information, a court often can assume that counsel did not need more time to incorporate the information into the defense's game plan.' "  Id.  Furthermore, a claim of a Rule 16 violation cannot succeed on review without a showing of prejudice to defendant.  United States v. Anderson, 446 F.3d 870, 875 (8th Cir. 2006).  Additionally, even if defendant had objected to admission of the evidence, the objection would have been overruled because defendant had

8

access to the text messages under the government's open file discovery policy six weeks prior to trial. The government is under no obligation to specifically identify which evidence it intends to offer at trial. See United States v. Panas, 738 F.2d 278, 284 (8th Cir. 1984) (Not error to admit exhibit when it was included in evidence available for defendant's review under government's open file policy).

In the present case, the evidence at issue is two single-sentence text messages. Defense counsel was able to cross-examine the investigating officer about the context of the text messages, and defense counsel had access to the text messages through the open file policy no later than September 17, 2009, which was two months before trial. Defendant does not allege how he was prejudiced by the admission of the text messages, and a claim of prejudice due to delay alone is not supported in this case when there was no objection to the admission of the evidence at trial or request for a continuance. The jury's verdict is not a miscarriage of justice under these circumstances. Accordingly, defendant's motion for a new trial is denied as it regards an alleged Rule 16 violation.

### 3. References to Defendant's Demeanor While Testifying

Hazelrigg's final ground for a new trial is that the prosecutor in his case made three comments in front of the jury about Hazelrigg looking to his attorney

9

for help when Hazelrigg was being cross-examined.² See Docket 506. Specifically, the prosecutor said: "Don't look at Mr. Pechota; just answer the question." Docket 473 at 451; "Don't look at Mr. Pechota before you answer." Docket 473 at 453; and "Is there a reason you keep looking at Mr. Pechota?". Docket 473 at 474.

Eighth Circuit case law shows that the statements by the prosecutor are not misconduct. While prosecutors may not express their personal opinions as to a witness's credibility, prosecutors may comment on witness credibility based on the evidence. United States v. Crockett, 49 F.3d 1357, 1362 (8th Cir. 1995). In Crockett, the court stated that "while it was for the jury to decide whether a defense witness 'grudgingly admitted' on cross exam that he lost track of [defendant] . . ., there was nothing wrong with [the] prosecutor suggesting that in closing argument." Id. In the present case, the prosecutor did not draw conclusions for the jury about why the defendant was looking to his attorney. The prosecutor's statements did not allege dishonesty on Hazelrigg's

---

² Hazelrigg also accuses the court of compounding the prejudice by stating to the jury while overruling the objection that the defendant was looking at his counsel for help in answering the cross-examination questions. (Docket 449 at 11). That is not accurate. The court merely overruled the objection and told the witness he may answer the question. Outside of the presence of the jury and while denying defendant's motion for mistrial, the court noted on the record the court's observation that Hazelrigg had appeared to look directly at his lawyer before answering questions on cross-examination. (Docket 473 at 231). But no such comments were made by the court in the presence of the jury.

10

part, but rather left the question of the defendant's credibility to the jury. The prosecutor expressed no personal opinion as to Hazelrigg's credibility.

Even if the prosecutor's statements could be considered to be misconduct, a new trial is not warranted because the statements did not affect the verdict. "If prosecutorial misconduct allegedly has occurred, a reviewing court looks into its prejudicial impact by assessing the cumulative effect of the misconduct, determining if the court took any curative actions, and gauging the strength of the entire trial." United States v. French, 88 F.3d 686, 689 (8th Cir. 1996) (citing United States v. O'Connell, 841 F.2d 1408, 1428 (8th Cir. 1988), *cert. denied*, 488 U.S. 1011 (1989)). In French, the Eighth Circuit held that the prosecutor's statement, "I think it is fair for you to conclude that he [the defendant] was lying to you," did not require a new trial. Id. at 688. The French court concluded that the statement did not require reversal when the prosecutor was "primarily leaving to the jury the question of the defendant's credibility[,]" the district court "cautioned the jury to disregard the prosecutor's statement[,]" and "the evidence against the defendant . . . was quite strong." Id. at 689. Likewise, in United States v. Peyro, 786 F.2d 826 (8th Cir. 1986), the Eighth Circuit held that the prosecutor's statement, "The man is an obvious liar," did not require reversal when the jury could not have been affected by the improper comment. Id. at 831.

11

Again, in the present case, the prosecutor did not draw conclusions for the jury about why the defendant was looking to his attorney or allege dishonesty on Hazelrigg's part. Rather, the prosecutor left the question of Hazelrigg's credibility to the jury. In addition, as outlined above, the evidence against the defendant was quite strong. While the court took no curative action of directing the jury to disregard the prosecutor's statements, none was needed because the prosecutor's remarks were not an improper comment on the witness's credibility. For these reasons, the prosecutor's statements did not affect the verdict, and a new trial is not warranted on the basis of prosecutorial misconduct.

### III. Motion for Arrest of Judgment

Hazelrigg also moved this court for arrest of judgment. "The court must arrest judgment if: (1) the indictment or information does not charge an offense; or (2) the court does not have jurisdiction of the charged offense." Fed. R. Crim. P. 34. In the absence of either of these circumstances, a motion for arrest of judgment is properly denied. United States v. Whitted, 454 F.2d 642, 646 (8th Cir. 1972). Defendant fails to show how either circumstance is present here. Accordingly, his motion for arrest of judgment is denied.

## CONCLUSION

Hazelrigg's motions for acquittal and new trial on the basis of the sufficiency of the evidence are denied because the evidence was clearly sufficient for a reasonable jury to conclude that Hazelrigg was guilty of a conspiracy to

distribute 50 grams or more of a mixture or substance containing methamphetamine.  Hazelrigg's motion for a new trial on the basis of the alleged [Rule 16](#) violation is denied because even if there was a violation, the defendant did not object to the admission of the evidence, request a continuance, or allege any prejudice from the admission of the evidence.  Hazelrigg's motion for a new trial with regard to the prosecutor's references to defendant's demeanor is also denied because even if the comments amounted to prosecutorial misconduct, they did not affect the verdict.  Finally, Hazelrigg's motion for arrest of judgment is denied because he neither shows that the indictment does not charge an offense nor does he show that this court does not have jurisdiction of the charged offense.

Accordingly, it is hereby

ORDERED that defendant's motions for acquittal, new trial, and arrest of judgment (Docket 449) are denied.

Dated April 13, 2010.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE
